IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


MARIA DEL CARMEN MEDINA TOVAR
and ADRIAN ALONSO MARTINEZ,                 3:17-cv-00719-BR

       Plaintiffs,                        OPINION AND ORDER

v.

LAURA B. ZUCHOWSKI, Director,
Vermont Service Center, United
States Citizenship and
Immigration Services; JOHN F.
KELLY, Secretary, Department
of Homeland Security;[1] and
JEFFERSON B. SESSIONS, III,
United States Attorney
General,

       Defendants.

**PHILIP JAMES SMITH**
**NICOLE HOPE NELSON**
Nelson Smith LLP
208 S.W. First Ave., Suite 360
Portland, OR 97204
(503) 224-08600

       Attorneys for Plaintiffs

**BILLY J. WILLIAMS**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney

---

[1] John F. Kelly is no longer the Secretary of Homeland Security, but a new Secretary has not yet been confirmed by the United States Senate, so his name remains in the caption for the time being.

1 – OPINION AND ORDER

1000 S.W. Third Ave, Suite 600
Portland, OR 97204
(503) 727-1000

      Attorneys for Defendants

**BROWN, Judge.**

This matter comes before the Court on the Motion (#12) for Summary Judgment filed by Defendants Laura B. Zuchowski, John F. Kelly, and Jefferson B. Sessions III and the Motion (#15) for Summary Judgment filed by Plaintiffs Maria del Carmen Medina Tovar and Adrian Alonso Martinez.

For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.  Accordingly, the Court **DISMISSES** this matter **with prejudice.**

## BACKGROUND

### I.   U Visa Status

Congress created a nonimmigrant visa status (referred to as U visa status) as part of the Victims of Trafficking and Violence Protection Action of 2000, Title V, Pub. L. No. 106-386, 114 Stat. 1464, 1518-37 (titled Battered Immigrant Women Protection Act of 2000).  This U visa status is for noncitizen victims of a crime who have suffered substantial mental or physical abuse and who assist law enforcement in the investigation or prosecution of the criminal activity.  Section 1513 of the legislation provides:

> The purpose of this section is to create a new
> nonimmigrant visa classification that will strengthen

2 - OPINION AND ORDER

>     the ability of law enforcement agencies to detect,
>     investigate, and prosecute cases of domestic violence,
>     sexual assault, trafficking of aliens, and other crimes
>     described in section 101(a)(15)(U)(iii) of the
>     Immigration and Nationality Act committed against
>     aliens, while offering protection to victims of such
>     offenses in keeping with humanitarian interests of the
>     United States.

114 Stat. at 1533.  This legislation was codified as part of the Immigration and Nationality Act (INA), United States Code, Title 8.  The U visa statutory provision is found at 8 U.S.C. § 1101(a)(15)(U)(I) (also referred to as the U-1 nonimmigrant visa statute).  The United States Citizenship and Immigration Services (the Agency) promulgates regulations related to U visa status.

To obtain U visa status a noncitizen victim files a petition (Form I-918) with the Agency.  8 C.F.R. § 214.14(c)(1).  The noncitizen bears the burden to establish eligibility for U visa status.  8 C.F.R. § 214.14(c)(4).

After U visa status is approved by the Agency, that status is valid for four years.  8 C.F.R. § 214.14(g).  After maintaining U visa status for three years, the holder may apply for lawful permanent-resident status.  8 U.S.C. § 1255(m); 8 C.F.R. § 245.14(k).

8 U.S.C. §1101(a)(15)(U)(ii) also permits a noncitizen victim who is 21 years of age or older and is the holder of a U visa to petition for derivative U visa status on behalf of a spouse and/or children who are "accompanying, or following to join" the victim.

3 – OPINION AND ORDER

The following regulations are also applicable to this dispute:

8 C.F.R. § 214.14(f)(1) provides: "An alien who has petitioned for or has been granted U-1 nonimmigrant status (*i.e.*, principal alien) may petition for the admission of a qualifying family member . . . if accompanying or following to join such principal alien."

8 C.F.R. § 214.14(f)(4) provides: "The relationship between the U-1 principal alien and the qualifying family member must exist at the time Form I-918 was filed, and the relationship must continue to exist at the time Form I-918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States." Exceptions apply when the person applying is under 21 and has an unmarried sibling under 18 or for children of the person submitting the petition. *See* 8 C.F.R. § 214.14(f)(4)(I) and (ii).

## II. Facts

The following material facts are taken from the parties' submissions in support of their Motions and are undisputed unless otherwise noted.

Plaintiff Medina Tovar was born in Mexico in 1992 and came to the United States when she was six years old. In 2004 she was the victim of a serious crime and suffered substantial physical and mental abuse at the age of 12 while living with her family in Seaside, Oregon.

On June 14, 2013, Medina Tovar filed a petition (Form I-918)

4 – OPINION AND ORDER

with the Agency to obtain U visa status because she had been the victim of a crime and she had cooperated in the investigation. On February 26, 2014, the Agency advised Media Tovar that she "appeared" to be eligible for U visa status, but the statutory cap for such visas had been met for that fiscal year. Medina Tovar, therefore, was placed on a waiting list for approval. Medina Tovar was not married at the time that she applied for U visa status.

On September 21, 2015, Medina Tovar married Plaintiff Alonso Martinez in Hillsboro, Oregon. Alonso Martinez is also a citizen of Mexico.

On November 24, 2015, the Agency notified Medina Tovar that she had been granted U visa status as of October 1, 2015.

On March 29, 2016, Medina Tovar filed a petition (Form I-918, Supplement A) for derivative U visa status for her husband as the "accompanying or following to join" spouse of a principal U visa holder.

On November 23, 2016, the Agency denied Medina Tovar's application for her husband for the sole reason that she was not married to him on June 14, 2013, which was the date she initially filed her application for U visa status.

Plaintiffs did not file an administrative appeal of the Agency's November 23, 2016, decision denying Medina Tovar's application for her husband.

On May 8, 2017, Plaintiffs filed a Complaint in this Court in which they seek declaratory and injunctive relief as a result

of the denial of Medina Tovar's application for derivative U visa status for her husband.

On September 1, 2017, Defendants filed their Motion for Summary Judgment. On September 25, 2017, Plaintiffs filed their Motion for Summary Judgment. The Court took both Motions under advisement on October 30, 2017.

## STANDARDS

### I. Summary Judgment

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law determines which facts are material. Only disputes over facts that might affect the outcome of the case under the governing law properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences drawn from the facts before the court must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986). *See also Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).

### II. Review of Administrative Decisions

A court may set aside a decision pursuant to the Administrative Procedures Act (APA), 5 U.S.C. § 500, *et seq.*, if

the Agency's decision was arbitrary, capricious, an abuse of discretion, or otherwise did not comply with the law. 5 U.S.C. § 706(2)(A). Review under the APA requires the court to determine whether an agency's decision is "founded on a rational connection between the facts found and the choices made" and whether the agency "has committed a clear error of judgment." *Id.* The agency's action "need only be a reasonable, not the best or most reasonable, decision." *Id.*

The court's review of the agency's action must be "searching and careful" but "narrow," and the court may not substitute its judgment for that of the agency. *Ctr. for Biological Diversity v. Kempthorne,* 588 F.3d 701, 707 (9th Cir. 2009). *See also River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010)(The court "may not substitute its judgment for that of the agency as to the wisdom or prudence of [the agency's] action.").

The court may overturn the agency action when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Lands Council v. McNair,* 629 F.3d 1070, 1076 (9th Cir. 2010).

**DISCUSSION**

The parties do not dispute any material facts.  Each party, however, asserts the undisputed facts and applicable legal analysis entitles them to summary judgment as a matter of law.

As noted, a noncitizen victim who is 21 years of age or older and is the holder of a U visa may petition for derivative U visa status on behalf of a spouse or children who are "accompanying, or following to join" the victim.  According to Plaintiffs, the Agency's regulation that requires the marital relationship to exist at the time the derivative U visa status application is submitted is arbitrary, capricious, and contrary to law in violation of congressional intent and the Equal Protection Clause of the Fourteenth Amendment.

Defendants, in turn, contend the U visa statute is ambiguous and does not clearly express Congress's intent.  According to Defendants, therefore, deference should be afforded the Agency's reasonable interpretation as set forth in the applicable provision of the Agency's regulations.[2]

**I.  The Law**

The Court follows the analytical framework the United States Supreme Court set out in *Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837 (1984), to determine whether the Agency

---

[2] Defendants also asserted in their Motion for Summary Judgment that Plaintiffs failed to exhaust their administrative remedies, which was a prerequisite to filing a complaint. Defendants, however, now concede exhaustion of administrative remedies is not a prerequisite to judicial review in this case, and they have withdrawn that argument.

8 – OPINION AND ORDER

regulation is inconsistent with the plain language of the statute and/or violates congressional intent.  *See also Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000); *Coyt v. Holder*, 593 F.3d 902 (9th Cir. 2010).  In particular, *Chevron* requires the Court to employ a two-step analytical framework to determine whether the published regulation exceeds statutory authority.  *See Coyt*, 593 F.3d at 905.

At step one the Court considers whether Congress "has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842 ("If the intent of Congress is clear, that is the end of the matter.").  To determine the intent of Congress, the Court looks at the precise statutory language and analyzes the statute in the context of the governing statute as a whole.  The Court presumes a congressional intent to create a "symmetrical and coherent regulatory scheme."  *Brown & Williamson*, 529 U.S. at 133.  The Court must "be guided to a degree by common sense as to the manner in which Congress is likely to delegate a policy decision . . . to an administrative agency."  *Id.*  If Congress expressed a clear intent on the question at issue, the Court "must give effect to the unambiguously expressed intent of Congress."  *Id.* at 843.  If, after analyzing the statute and Congress's intent at step one of *Chevron*, the Court concludes congressional intent is ambiguous or that Congress has not clearly expressed its intent as to the particular issue, the Court proceeds to the second step.  *See Coyt*, 593 F.3d at 905.

At step two the Court "must respect the agency's

9 – OPINION AND ORDER

construction of the statute so long as it is permissible." *Chevron*, 467 U.S. at 843. "In such a case an agency's interpretation of a statute will be permissible, unless arbitrary, capricious, or manifestly contrary to the statute." *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,* 353 F.3d 1051, 1059 (9th Cir. 2003)(quoting *Chevron*, 467 U.S. at 844).

## II. Analysis

As noted, 8 U.S.C. § 1101(a)(15)(U)(ii) authorizes a U visa holder to apply for derivative U visa status for their spouse and children who are "accompanying, or following to join" the U visa holder. The Agency regulation, however, provides "the relationship between" the noncitizen who petitioned for and was granted U visa status and the qualifying family member "must exist at the time Form I-918 was filed, and the relationship must continue to exist [both] at the time Form I-918, Supplement A is adjudicated, and at the time of the qualifying family member's subsequent admission to the United States." 8 C.F.R. § 214.14(f)(4).

### A.   *Chevron* Step One - Congressional Intent

Plaintiffs acknowledge the term "accompanying, or following to join" is not defined in 8 U.S.C. § 1101(a)(15)(U). Plaintiffs assert, however, it is a "term of art that has a settled meaning that has always been employed by Congress to allow for family unity by permitting the spouse and minor children of the principal visa holder to lawfully reside with their family member in the United States." Plaintiffs contend Congress has not

10 - OPINION AND ORDER

restricted the term "accompanying, or following to join" to only include family relationships that predate a principal's application for either immigrant or nonimmigrant status.

Defendants, in turn, contend Congress did not specifically address in 8 U.S.C. § 1101(a)(15)(U) the issue of when a qualifying relationship must exist for purposes of meeting the "accompanying, or following to join" requirement in the U visa nonimmigrant context.  Defendant contend, therefore, the congressional intent is not clear, the statutory provision is ambiguous, and the Court must proceed to step two of the *Chevron* analysis.

Although the Court agrees the over-arching Congressional intent expressed in immigration laws is to promote family unity, Congress did not explicitly address in 8 U.S.C. § 1101(a)(15)(U) when a qualifying relationship must exist for purposes of meeting the "accompanying, or following to join" requirement for a nonimmigrant derivative U visa.  The term "accompanying, or following to join" has, in fact, different interpretations depending on the immigration context.

The INA classifies visas as either immigrant or nonimmigrant.  Immigrant visas are issued to persons seeking to live permanently in the United States while nonimmigrant visas are issued to persons with permanent residences abroad, but who seek to be in the United States on a temporary basis for some prescribed purpose.  8 U.S.C. § 1101(a)(15).  The INA allows spouses of persons with immigrant visas to accompany or to follow

their spouse (8 U.S.C. § 1101(a)(27)(c) and 1153(d)), and the Agency's regulations do not specify when the relationship must exist.

The cases on which Plaintiffs relied to show the term "accompanying, or following to join" had a "settled meaning" when Congress enacted the U visa statute address the issue in the context of immigrant visa status and not in the context of nonimmigrant visas. The Agency distinguishes between the benefits that are conferred on those who apply to immigrate and those who apply for nonimmigrant status. Thus, even if the meaning of "accompanying, or following to join" has a "settled meaning" in immigrant cases, those cases are not controlling here because Plaintiffs are nonimmigrants who are seeking derivative nonimmigrant status.

Based on the statutory language of 8 U.S.C. § 1101(a)(15)(U) and the context of the statute as a whole, the Court concludes Congress did not directly address "the precise question at issue" as to the derivative U visa status. Accordingly, the Court must proceed to step two of the *Chevron* analysis.

### B. *Chevron* Step Two

Under step two the Court "must respect the agency's construction of the statute so long as it is permissible." *Chevron,* 467 U.S. at 843. The Court, however, "must reject those constructions that are contrary to clear congressional intent or that frustrate the policy that Congress sought to implement" (*Schneider v. Chertoff*, 450 F.3d 944, 952 (9th Cir. 2006)) or

that are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

"The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843. If the Agency's regulation "fills the gap or defines a term in a way that is reasonable in light of the legislature's design," the Court must give that interpretation "controlling weight." *Nations Bank of N. Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995).

Plaintiffs contend the Agency regulation violates the clear intent of Congress by restricting eligibility for derivative U visa status; *i.e.*, according to Plaintiffs the regulation redefines "accompanying, or following to join" by requiring the spousal relationship to predate the application for U visa status, and, therefore, the regulation is *ultra vires*.

Defendants, however, contend the regulation is a reasonable and permissible interpretation of the statute and entitled to deference by the Court. Defendants also point out that persons who marry after a U visa status application is filed are still able to seek permanent residence status after the U visa status holder meets other statutory requirements. *See* 18 U.S.C. § 1255(m).

The Court notes there is analogous interpretive precedence in the context of persons who receive nonimmigrant status such as

refugees and asylum seekers who receive benefits similar to those who receive nonimmigrant U visa status.  A person seeking asylum enters the United States and applies for asylum status after they are in the United States.  8 U.S.C. § 1158.  For the spouse of the person seeking asylum to receive similar status, the spousal relationship must exist at the time the asylum application is approved.  8 C.F.R. § 208.21(b).  A refugee is granted refugee status when they are outside of the United States.  8 U.S.C. § 1157.  For the spouse of a refugee to receive admission as a refugee, the relationship must exist before the refugee's admission to the United States.  8 C.F.R. § 207.7(c).

Although 28 U.S.C. § 1101(a)(15)(U) governing nonimmigrant U visa status does not address the issue of when the spousal relationship must exist for the spouse to receive the derivative benefit of a U visa status, the Agency's regulation regarding derivative U visa status is consistent with and most similar to other regulations that govern nonimmigrant statuses such as refugee and asylum seekers.  Thus, the Court concludes the Agency's regulations as to the required spousal relationship when U visa holders apply for a derivative U visa for their "accompanying, or following to join" nonimmigrant spouses are reasonable and consistent with other regulations that govern nonimmigrant statuses.

In light of the requirements of "accompanying, or following to join" in other statutes enacted by Congress and regulations promulgated by the Agency that govern nonimmigrant statuses and

14 – OPINION AND ORDER

the fact that the Agency has "the power . . . to fill any gap left implicitly or explicitly, by Congress" that "is reasonable in light of the legislative design," the Court concludes the Agency's regulation as to derivative U visa status is reasonable and not "arbitrary, capricious, or manifestly contrary to the statute."

## II.  Equal Protection

Finally, Plaintiffs assert the Agency's regulation creates an unreasonable distinction between spouses and the children of U visa holders by requiring the spousal relationship to predate the application.  Plaintiffs point out that the Agency regulation allows children of U visas holders who are born after the principals file their applications for U visa status to obtain derivative status.  See 8 C.F.R. § 214.14(f)(4)(I).  Plaintiffs contend such a distinction violates Fourteenth Amendment guarantees of equal protection and does not further any legitimate governmental purpose.

Defendants, in turn, argue the difference in the treatment of "accompanying, or following to join" spouses and after-born children of U visa status holders is rationally based on the underlying benefits of the particular statute and is not a violation of the Equal Protection Clause.  Specifically, Defendants point out that the treatment of the spouse of U visa holders is based on concerns of marriage fraud after the holder of the U visa obtains that status (*i.e.*, that a person may marry to obtain the nonimmigrant benefit), and such concern obviously

is not an issue as to children born to persons after they obtain U visa status.

Congressional distinctions between classes of noncitizens are subject to rational-basis review. *Aleman v. Glickman*, 217 F.3d 1191, 1197 (9th Cir. 2000). Rational-basis review, however, does not give the courts "a license . . . to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993)(quoting *FCC v. Beach Commc'n, Inc.*, 508 U.S. 307, 313 (1993)). Instead "a statutory classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Aleman*, 217 F.3d at 1201 (quoting *Beach*, 508 U.S. at 313).

As noted, U visa status is a nonimmigrant status for persons who seek to be in the United States on a temporary basis for some particular purpose. In order for the spouse of a U visa holder to obtain derivative status, the Agency regulations require the spousal relationship to have existed at the time the application for U visa status was filed. Although this requirement is different from the requirements for immigrants, the distinction is based on the difference in the underlying benefits and the possibility of marriage fraud. Marriage fraud was already an established part of immigration law when Congress enacted the U visa statute. *See* Immigration Marriage Fraud Amendments of 1986, Public Law 99-639 (imposing additional requirements and scrutiny to marriage-based immigration in order to deter immigration-

related marriage fraud); 8 U.S.C. § 1324c (imposing civil penalties for creating or using false documents to obtain an immigration benefit); 18 U.S.C. § 1546 (criminalizing the use of fraudulent immigration documents); 8 U.S.C. § 1227(a)(1)(G) (subjecting aliens who commit marriage fraud to deportation); 8 U.S.C. § 1182(a)(6)(c) (making admission to the United States impermissible for any aliens who have sought to procure an immigration benefit by fraud).  The concern reflected in these statutes creates a rational basis for the Agency's regulation requiring the spousal relationship to exist at the time the U visa application was initially filed in order to seek derivative status for the "accompanying or following to join" spouse of the U visa holder.

Also as noted, the regulations governing other nonimmigrant statuses include similar requirements.  For example, refugee status is sought and obtained before a person enters the United States, and, therefore, the spousal relationship must exist before the "principal alien" enters the country.  *See* 8 U.S.C. § 1157.  The person seeking asylum either enters the country on a different status or on no status at all and only applies for asylum after he or she is in the United States.  The spousal relationship, therefore, must exist before approval of the application for asylum.  *See* 8 U.S.C. § 1158.

Moreover, the Court finds the U visa regulation at issue here does not violate equal protection.  The statute itself provides a process for noncitizens who marry a U visa holder

17 – OPINION AND ORDER

after submission of the U visa holder's application to become lawful permanent residents after the U visa holder obtains lawful permanent residency.  *See* 8 U.S.C. § 1255(m).

On this record, therefore, the Court concludes the Agency's regulation that a spouse cannot receive derivative U visa status pursuant to 8 U.S.C. § 1101(a)(15)(U)(ii) unless the spousal relationship existed at the time the holder of the U visa filed the  application for U visa status does not violate the Equal Protection clause of the Fourteenth Amendment.

In summary, the Court concludes Congress did not express a clear intent within the statute that addresses the issues raised here; the Agency's promulgation of the regulation regarding the spousal requirement is entitled to the Court's deference because the regulation is reasonable in the context of the governing statute and is not clearly arbitrary, capricious, or manifestly contrary to the statute; and the Agency's regulation does not violate the Equal Protection Clause of the Fourteenth Amendment.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.  Accordingly, the Court **DISMISSES with prejudice** Plaintiffs' Complaint and enters judgment in favor of Defendants.

IT IS SO ORDERED.

DATED this 15th day of December, 2017.

/s/ Anna J. Brown
ANNA J. BROWN
United States Senior District Judge